BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Nevada Gaming Partners, LLC*

| Electronically filed October 12, 2016 |

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-16-15521-led |
| NEVADA GAMING PARTNERS, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | **EMERGENCY FIRST DAY MOTION FOR INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND FED. R. BANKR. P. 4001(b) AND 4001(d): (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING** |
| | Hearing Date:    OST PENDING |
| | Hearing Time:    OST PENDING |
| | Estimated Time for Hearing:  30 minutes |

Nevada Gaming Partners, LLC ("the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), respectfully submits this emergency first day motion (the "Motion") for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to sections 361, 362 and 363 of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), Rules 4001(b) and 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) and 4001(c) of the Local Rules for the U.S. Bankruptcy Court, District of Nevada ("Local Rules"): (i) authorizing and approving, among other things, (a) Debtor to use the cash collateral of the Pre-Petition Lender (defined below), (b) Debtor to provide

ACTIVE 42714763v2 10/12/2016

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

adequate protection to the Pre-Petition Lender, (c) the form and manner of service of this Motion; and (ii) scheduling interim and final hearings with respect to the relief requested herein.  The proposed Interim Order is attached to this Motion as **Exhibit "1."**

Debtor seeks authorization for the use of cash collateral in order to provide funding and liquidity for the ongoing operation of Debtor's business and to fund the expenses of the Chapter 11 Case.  Debtor is in negotiations with the Pre-Petition Lender (defined below) regarding the use of cash collateral but has not yet reached an agreement on the terms thereof (a "Cash Collateral Agreement").[1]  Debtor is seeking to use cash collateral pursuant to a Cash Budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to this Motion as **Exhibit "2"** (the "Initial Cash Budget").

In compliance with Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Local Rules 4001(b) and 4001(c), Debtor provides the following additional information regarding the proposed use of cash collateral:[2]

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
| --- | --- |
| ¶ D | **Entity with Interest in Cash Collateral:** Western Alliance Bank and Bank of Nevada (the "Pre-Petition Lender"). |
| ¶¶ 2,3,4 | **Purposes for Use of Cash Collateral:** From the Petition Date through the Termination Date (as defined below), Debtor shall be permitted to use the Pre-Petition Lender's Cash Collateral (as defined in Bankruptcy Code section 363(a), including, without limitation, Cash Collateral that consists of |

---

[1] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the Interim Order.

[2] The following is a summary of the proposed Interim Order.  Nothing in this summary alters or amends the terms of the proposed Interim Order or any Cash Collateral Agreement, and to the extent of any conflict between this summary and the Interim Order or any Cash Collateral Agreement, the Interim Order (or any Cash Collateral Agreement, as applicable) shall control.

[3] The proposed Interim Order is attached to this Motion as **Exhibit "1."**

[4] All provisions listed below as being contained in the proposed Interim Order are proposed to remain in effect if interim approval is granted, but final relief is denied, as provided under Bankruptcy Rule 4001(b)(2) unless otherwise noted.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

ACTIVE 42714763v2 10/12/2016

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | proceeds of the Pre-Petition Lender's collateral existing as of the Petition Date (the "Pre-Petition Collateral"). Debtor shall have no right to use the Pre-Petition Lender's Cash Collateral after the occurrence and during the continuance of any Event of Default (as defined below), except as provided with respect to the Carve-Out. |
| | Subject to the Cash Budget (as defined below), Debtor shall be authorized to use Cash Collateral for (i) funding expenses associated with operating Debtor's businesses, (ii) making adequate protection payments to the Pre-Petition Lender, (iii) paying expenses incurred for the administration of the Chapter 11 Case, including paying compensation of professional fees and expenses, (iv) paying contractual obligations, consistent with the Final Order, and (v) repaying borrowings under any debtor-in-possession financing ("DIP Financing"). |
| | Under no circumstances shall any of the Pre-Petition Lender's Cash Collateral be used to pursue any action or joinder in any action, counter-claim, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, determination or similar relief (including conducting formal or informal discovery in connection therewith) (a) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the Pre-Petition Lender against Debtors or any lien of the Pre-Petition Lender against Debtors' property (collectively, the "Pre-Petition Lender's Liens/Claims"); (b) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the Pre-Petition Lender's Liens/Claims; (c) seeking authority to use any of the Pre-Petition Lender's Cash Collateral without the Pre-Petition Lender's consent, other than as provided herein; or (d) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the Pre-Petition Lender against Borrowers under the Credit Agreement; provided, however, that should a statutory committee be appointed under Bankruptcy Code section 1102 ("Committee"), such Committee may use, subject to the Cash Budget, up to $25,000 of Pre-Petition Lender's Cash Collateral, solely to investigate the Pre-Petition Lender's Liens/Claims; and provided further, however, that any challenge regarding the Pre-Petition Lender's Liens/Claims asserted by such committee(s) must be commenced on or before the earlier to occur of (x) twenty (20) days after the appointment of such committee; or (y) sixty (60) days after the Petition Date. |
| ¶¶ 4-5 | **Cash Budget**: All use of the Pre-Petition Lender's Cash Collateral shall be subject to compliance with, in addition to the Interim Order, an approved budget that is reasonably acceptable in form and substance to the Pre-Petition Lender or as otherwise ordered by the Court if the Pre-Petition Lender does not approve said budget (as amended or modified from time to |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

ACTIVE 42714763v2 10/12/2016

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | time, the "Cash Budget"), provided that the Pre-Petition Lender's consent shall not be required for the Initial Cash Budget, which instead shall deemed to be a Cash Budget approved in accordance with the Interim Order. The Initial Cash Budget shall reflect Debtor' (a) budgeted cash receipts (including as a result of the receipt of proceeds from any DIP Financing advances) for the three (3) calendar months or thirteen (13) calendar weeks following the Petition Date, and (b) anticipated disbursements (including payments required under the terms of any DIP Financing) for each of the three (3) calendar months or thirteen (13) calendar weeks following the Petition Date; provided, however, that compliance with the Initial Cash Budget (and any further Cash Budgets thereafter) shall be deemed satisfied if the actual aggregate expenditures for every four-week period (i.e. post-petition weeks one through four, weeks five through eight, etc.) do not exceed by more than twenty percent (20%) the aggregate budgeted amount for such four-week period as set forth in the Cash Budget.<br><br>     To the extent that the full amount of the expenses budgeted for a particular four-week period under the Cash Budget is not disbursed during such four-week period, the unused balance shall be added to the amount of budgeted expenses for ensuing four-week periods and the Cash Budget shall be deemed to be amended (and approved) to reflect the same, such that Debtor may use such unused budgeted amounts in subsequent four-week periods in addition to originally budgeted amounts for such four-week periods.<br><br>     The Initial Cash Budget is attached to this Motion as **Exhibit "2."** The Cash Budget may be modified with the written consent of Debtor and the Pre-Petition Lender, without the need for Bankruptcy Court approval, or, if the Pre-Petition Lender does not provide written consent thereto, then upon Bankruptcy Court approval. |
| ¶ 8 | **Term**: The Debtor' authorization to use the Pre-Petition Lender's Cash Collateral shall be effective through the earliest of (a) fifteen (15) months from the Petition Date, unless (x) the confirmation hearing for Debtor' chapter 11 plan has commenced on or before such date, in which case the foregoing fifteen (15) month period shall be extended automatically to eighteen (18) months from the Petition Date without action or approval by Debtor, the Pre-Petition Lender or the Bankruptcy Court, or (y) a date as otherwise agreed to in writing by Debtor and the Pre-Petition Lender (for which no Bankruptcy Court approval will be required), (b) the date any chapter 11 plan confirmed in the Chapter 11 Case becomes effective, or (c) the occurrence of an Event of Default (defined below) that is no longer subject to cure (each, a "Termination Date"). Notwithstanding the occurrence of a Termination Date, upon Debtor' receipt of sufficient funds, |

4

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
|  | Debtor shall be entitled to continue to use the Pre-Petition Lender's Cash Collateral to pay (i) amounts that fall within the scope of the Carve-Out, and (ii) all expenses set forth in and in accordance with the Cash Budget for the period through the Termination Date. |
| ¶ 6 | **Adequate Protection for Pre-Petition Lender**: As adequate protection under Bankruptcy Code sections 361, 362, 363 and 552 for any diminution in the value (as it existed on the Petition Date) of Pre-Petition Lender's interest in its collateral as it existed on the Petition Date (the "Pre-Petition Collateral") (any such diminution to be determined by agreement or order of the Bankruptcy Court after notice and a hearing) caused by the imposition of the automatic stay and/or Debtor' use of the Pre-Petition Lender's Cash Collateral and other Pre-Petition Collateral (a "Value Diminution"), the Pre-Petition Lender shall receive:<br><br>    (a)    monthly adequate protection payments made by Debtor to the Pre-Petition Lender in an amount equal to the non-default contractual rate of interest applicable from time to time to amounts outstanding under the March 21, 2013 Loan and the December 7, 2015 Loan (the "Two Secured Loans") and on the June 14, 2016 Loan in the event that it is determined that the Pre-Petition Lender has liens on Debtor's property securing that loan (the "Adequate Protection Payments"), which Adequate Protection Payments shall commence on the first day of the first month which is at least thirty (30) days after the Petition Date and continuing on the first day of each month thereafter during the pendency of the Chapter 11 Case , and the automatic stay hereby is vacated and modified to the extent necessary to permit Debtor to make such Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Liens/Claims;<br><br>    (b)    replacement liens to secure the amount of any Value Diminution (the "Replacement Liens"), which Replacement Liens shall: (i) have the same legality, validity, perfection, priority, enforceability, effectiveness that the Pre-Petition Lender's liens and claims had as of and prior to the Petition Date, (ii) be subject to dispute and/or challenge on any basis, including, without limitation, the legality, validity, priority, perfection, amount thereof that Pre-Petition Lender's liens and claims had or were subject to as of the Petition Date, (iii) be subject to being invalidated, set aside, avoided or subordinated, in whole or in part that the Pre-Petition Lender's liens and claims were subject to as of and prior to the Petition Date (hereinafter, any dispute, objection to or challenge of the Replacement Liens and Pre-Petition Lender's liens and claims as of and prior to the Petition Date as set forth in sections 6(b) (i), (ii) and (iii) hereinabove, shall be collectively referred to as  "Challenges" and individually as a "Challenge"), (iv) be subject and junior to the Carve-Out |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| | (defined below), and any Prior Liens,[6] (v) attach to the Collateral as of the Petition Date and any other assets of Debtor that are subject to a valid and perfected lien as of the Petition Date, and any other previously unencumbered assets of Debtor, and any proceeds of the foregoing other than causes of action and rights of Debtor and its estate under §§542-553 of the Bankruptcy Code and the proceeds thereof ("Avoidance Actions"), and (v) be in addition to the Pre-Petition Lender's Liens/Claims and liens; and<br><br>(c) to the extent permitted by Bankruptcy Code section 507(b), a superpriority claim (the "Pre-Petition Lender's Superpriority Claim") against Debtor's estate, subject and junior only to the Carve-Out and Challenge and shall not be applicable to, or effective against, Avoidance Actions. |
| ¶ 7 | **Carve-Out**: All claims and liens of the Pre-Petition Lender, including, without limitation, the Replacement Liens and the Pre-Petition Lender's Superpriority Claims, shall be subject to a carve-out (the "Carve-Out") for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent amounts are not available under the Cash Budget, an amount not exceeding $300,000 in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Debtor and any Committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Pre-Petition Lender shall not, have any right to seek disgorgement); provided, however, that (x) Debtor shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the Pre-Petition Lender shall not have, any right to seek disgorgement thereof; and provided, further, that nothing herein shall be construed to impair the ability of the Pre-Petition Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtor or any Committee. |

---

[6] "Prior Liens" shall consist of any and all valid and duly perfected liens, mortgages or other security interests in the Pre-Petition Lender's collateral in existence and senior to the interests of Pre-Petition Lender as of the Petition Date.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

6

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
| --- | --- |
| ¶ 9 | **Events of Default**: Upon written notice from the Pre-Petition Lender, any of the following is an event of default ("Event of Default") under the Interim Order (for purpose of items (i) through (ix) by way of a final order, the effectiveness of which has not been stayed): (i) appointment of a chapter 11 trustee with respect to the Chapter 11 Case; (ii) appointment of an examiner with expanded powers with respect to the Chapter 11 Case; (iii) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (iv) dismissal of the Chapter 11 Case; (v) the Bankruptcy Court terminating Debtor's authority to operate its business; (vi) reversal, vacatur or stay of the effectiveness of the Interim Order ; (vii) the Interim Order being amended, supplemented or otherwise modified without the prior written consent of the Pre-Petition Lender; (viii) any use of Cash Collateral to make a payment that is not in compliance with the Cash Budget; (ix) breach by Debtor of any other provision of the Interim Order or Final Order and such breach remains uncured for a period of ten (10) days after written notice of such breach is actually received by Debtor. |

*Types of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)[8]*

| | |
| --- | --- |
| ¶ 6 | **(i) Grant of priority/lien under 11 U.S.C. § 364(c) or (d)**: Not under sections 364(c) or (d), but Debtor will grant the Pre-Petition Lender the Replacement Liens and Pre-Petition Lender's Superpriority Claim as part of the proposed adequate protection under Bankruptcy Code sections 361, 362, 363 and 552. |
| ¶ 6 | **(ii) Adequate protection for pre-petition claims**: Yes—see above. |
| | **(iii) Determination re: pre-petition lien/claim**: None. |
| ¶ 6 | **(iv) Waiver/modification of the automatic stay**: The automatic stay is vacated and modified to the extent necessary to permit Debtor to make the Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Liens/Claims. |
| N/A | **(v) Waiver/modification of rights re: chapter 11 plan, cash collateral or post-petition financing**: None. |

---

[8] Although Bankruptcy Rule 4001(c)(1)(B) applies to obtaining post-petition credit under Bankruptcy Code section 364, Debtor is identifying these types of provisions to the extent applicable to the Interim Order or a Cash Collateral Agreement in an abundance of caution to ensure compliance with Bankruptcy Rule 4001(d)(1)(B) and Local Rule 4001(c)(3).

ACTIVE 42714763v2 10/12/2016

| CITATION TO INTERIM ORDER[3] | MATERIAL PROVISIONS OF INTERIM ORDER[4] |
|---|---|
| ¶ 8 | **(vi) Confirmation/disclosure statement deadlines**: A Termination date will occur unless the confirmation hearing for Debtor' chapter 11 plan has commenced within fifteen (15) months after the Petition Date, subject to an automatic extension through the date that is eighteen (18) months after the Petition Date if the confirmation hearing has commenced within fifteen (15) months after the Petition Date. |
| N/A | **(vii) Wavier/modification of lien rights under non-bankruptcy law**: None |
| N/A | **(viii) Release of estate cause of action**: None. |
| N/A | **(ix) Indemnification**: None. |
| N/A | **(x) 506(c) waiver**: None. |
| ¶ 6 | **(xi) Lien/claim on avoidance actions**: None. |

This Motion is made and based upon the following memorandum of points and authorities, the Omnibus Declaration of Bruce I. Familian (the "Omnibus Declaration"), filed in support of Debtor's First Day Motions on October 12, 2016, the Declaration of Bruce I. Familian filed concurrently herewith in support of this Motion (the "Familian Declaration"), the Declaration of Jeffrey C. Perea filed concurrently herewith in support of this Motion (the "Perea Declaration"), the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 12ᵗʰ day of October, 2016.

**FOX ROTHSCHILD LLP**

By___*/s/ Brett Axelrod*_____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *[Proposed] Counsel for Nevada Gaming Partners, LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

8

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**JURISDICTION**

1.      This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are Bankruptcy Code sections 361, 362 and 363, Bankruptcy Rules 4001(b) and 4001(d), and Local Rules 4001(b) and (c).

4.      Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

**II.**

**FACTUAL BACKGROUND**

**A.      General Background.**

5.      On October 12, 2016 (the "Petition Date"), Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      Debtor is continuing in possession of its property and is operating and managing its business, as Debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108.  See generally Chapter 11 Case Docket.

7.      No request has been made for the appointment of a trustee or examiner, and no statutory committee ("Committee") has been appointed.  See id.

8.      The factual background relating to Debtor's commencement of the Chapter 11 Case is set forth in detail in the Omnibus Declaration and is incorporated for all purposes herein by this reference.

**B.      Debtor's Need to Use Cash Collateral.**

9.      As described in greater detail below and in the Omnibus Declaration and the Familian Declaration, the Pre-Petition Lender holds a lien on all of Debtor's personal property and the proceeds

9

ACTIVE 42714763v2 10/12/2016

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

thereof, as of the Petition Date securing its claims on loans it made to the Debtor.  As a result, the Pre-Petition Lender asserts an interest in all cash held by Debtor as of the Petition Date.  However, certain collateral, such as the Debtors' cash held in casino cages and slot machines, is not subject to any lien or encumbrance in order to comply with various federal and state gaming regulations.  Now that Debtor has commenced its Chapter 11 Case, Debtor requires either the consent of the Pre-Petition Lender or approval of the Court to use the Pre-Petition Lender's cash collateral.

10.    Debtor does not have any other source of cash to fund operations that is not the Pre-Petition Lender's cash collateral.  Moreover, although Debtor will be seeking approval of  DIP Financing in order to provide funding for US Trustee fees, court fees and fees and expenses of professionals retained pursuant to Bankruptcy Code sections 327 and 1103 in this Chapter 11 Case, Debtor still primarily needs to rely on the use of cash collateral to maintain its business operations and remain current on expenses.  See Initial Cash Budget.  As set forth in the Initial Cash Budget, Debtor projects that it will need to use more than $3,026,559 during the first thirteen (13) weeks following the Petition Date in order to meet its operating expenses and make adequate protection payments to the Pre-Petition Lender[5].  The Initial Cash Budget is based on cash flow projections prepared by Debtor's proposed financial advisor—if actual results do not match projections, then Debtor' need to use cash collateral may differ from the amounts set forth in the Initial Cash Budget.  Thus, Debtor has an urgent and immediate need to use cash collateral.  With this necessity in mind, Debtor and the Pre-Petition Lender are currently negotiating the terms of a consensual cash collateral agreement.

**C.    The Pre-Petition Loans**

11.    The Pre-Petition Lender made the following loans (collectively, the "Loans") to the Debtor and asserts that such Loans are valid and secured as follows:

a)    Loan made on March 21, 2013 in the principal amount of $300,000 which by amendment on April 1, 2014 was increased to $500,000 (the "March 21, 2013 Loan").  The various loan documents and amendments thereto include the following:

---

[5] Projected collections during this period are $3,143,169 leaving a net positive cash balance of $116,911)

ACTIVE 42714763v2 10/12/2016

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

(i)     Revolving Loan Agreement dated March 21, 2013, as amended between Debtor and Pre-Petition Lender,

(ii)    Revolving Promissory Note dated March 21, 2013, executed by Debtor and issued to Pre-Petition Lender.

(iii)   Security Agreement dated March 21, 2013 entered between Debtor and Pre-Petition Lender which states that Loan is generally secured by Accounts, Equipment (other than Gaming Devices as defined in NRS §463.0155) and General Intangibles, and other property set forth therein.

(iv)    Deed of Trust And Security Agreement With Assignment of Rents and Fixture Filing executed by NGP Stephanie Property, LLC ("NGP Stephanie") which states that the March 21, 2013 Loan is secured by Real Property known as 5520 Stephanie Street, Las Vegas, Nevada ("Stephanie Property") together  with NGP Stephanie's rights and interests in various personal property as set forth therein.  Said Deed of Trust was recorded with the Clark County Recorder's office on March 25, 2013, No. 201303250002373.

(v)     Modification to Deed of Trust And Security Agreement With Assignment of Rents and Fixture Filing dated April 1, 2014 and recorded with the Clark County Recorder's office on April 4, 2014, No. 20140404-0001091 which modified the aforesaid Deed of Trust to increase the loan amount to $500,000.

b)      Loan made on December 7, 2015 in the principal amount of $500,000 (the "December 7, 2015 Loan").  The various loan documents and amendments thereto include the following:

(i)     Business Loan Agreement dated December 7, 2015 between Debtor and Pre-Petition Lender,

(ii)    Promissory Note dated December 7, 2015 executed and issued by Debtor to Pre-Petition Lender.

(iii)   Commercial Security Agreement dated December 7, 2015 entered between Debtor and Pre-Petition Lender which states that Loan is generally secured by accounts, general intangibles, instruments, rents, monies, and all equipment as described on schedule A attached thereto, as well as other property set forth therein.

c)      Loan made on June 14, 2016 in the principal amount of $500,000 (the "June 14, 2016 Loan").  The various loan documents and amendments thereto include the following:

(i)     Promissory Note dated June 14, 2016 executed and issued by Debtor to Pre-Petition Lender.

(ii)    Commercial Guaranty executed by Klondike Partners, LLC ("Klondike") dated June 14, 2016.

11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

1

2

        (iii)    Commercial Security Agreement dated June 14, 2016 entered between Klondike and Pre-Petition Lender which states that Loan is generally secured by accounts, general intangibles, instruments, rents, monies, and all equipment as described on exhibit B attached thereto, as well as other property set forth therein.

3

4

5

6

        (iv)    Deed of Trust executed by Klondike which states that the June 14, 2016 Loan is secured by Real Property known as 444 West Sunset Road, Henderson, Nevada ("Klondike Property") together with Klondike's rights and interests in various personal property as set forth therein. Said Deed of Trust was recorded with the Clark County Recorder's office on June 17, 2016, No. 20160617-0001050.

7

8

The Debtor believes that there is no security agreement granting a lien on its property to secure the June 14, 2016 Loan and, accordingly, as to the Debtor said loan is unsecured.

9

10

11

12

13

14

15

        12.    Based on statements Debtor received, Pre-Petition Lender asserts that the present principal balance of the Loans is approximately as follows: (i) The Two Secured Loans total approximately $921,000 (March 21, 2013 Loan's principal balance is $495,829 and December 7, 2015 Loan's principal balance is $425,000); and (ii) June 14, 2016 Loan's principal balance is $500,000. Debtor believes that accrued and unpaid interest on the Two Secured Loans should not be significant since the payments on each of the Two Secured Loans were current until a month or two prior to the Petition Date. See Familian Declaration, page 5, ¶ 14.

16

17

18

        13.    Pursuant to statements issued by Pre-Petition Lender, the current interest rates on the loans are as follows: (i) 5.25% on March 21, 2013 Loan, (ii) 4.95% on December 7, 2015 Loan, and (iii) 4.75% on June 14, 2016 Loan. See Familian Declaration, page 5, ¶ 15.

19

20

21

22

23

        13.    The March 21, 2013 Loan and the December 7, 2015 Loan are allegedly secured by the Debtor's assets, having an estimated value of $3,042,367. The March 21, 2013 Loan is also secured by the Stephanie Property which Debtor assets has a value of $4,125,000, the prior lien thereon (also held by Pre-Petition Lender) has a balance of approximately $1,210,000, leaving equity in the amount of $2,915,000 securing the March 21, 2013 Loan. See Familian Declaration, page 5, ¶ 16.

24

25

26

27

28

        14.    The June 14, 2016 Loan is secured by Klondike's personal property. More significantly, it is also secured by the Klondike Property, which Debtor asserts has value of $5,000,000, the prior lien thereon (also held by Pre-Petition Lender) has a balance of approximately $1,435,000, leaving equity in the amount of $3,565,000 securing the loan. See Familian Declaration, page 6, ¶ 17.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

12

ACTIVE 42714763v2 10/12/2016

15.     NGP Stephanie and Klondike are related to the Debtor by common ownership.  See Familian Declaration, page 6, ¶ 18.

### III.

### RELIEF REQUESTED

By this Motion, Debtor seeks authorization to use the Pre-Petition Lender's Cash Collateral and provide adequate protection to the Pre-Petition Lender on the terms set forth in the Interim Order pursuant to a Cash Budget.  The Initial Cash Budget (pertaining to the first 13-week period) is attached to this Motion as **Exhibit "2."**

Pursuant to Bankruptcy Rule 4001(b)(2), Debtor is seeking authorization to use cash collateral pending a final hearing on the Motion in order to avoid immediate and irreparable harm to its estate.  In order to keep Debtor's business operational, Debtor must be able to pay non-debtor parties to leases and participation agreements with respect to its Slot Routes, satisfy other ongoing working capital needs and expenses of operation, including, without limitation, employee payroll expenses, post-petition vendors and contract parties.  It must also fund the costs of administering Debtor's estate, including without limitation, fees assessed by the Office of the United States Trustee and the Clerk of Court and fees and expenses of estate professionals.  Ensuring uninterrupted payment to employees, vendors and non-Debtor parties to Slot Route leases and participation agreements is particularly crucial because they have the ability to terminate those agreements on relatively short notice, which in turn could severely and adversely impact Debtor's collection of revenue.

As indicated by the Initial Cash Budget, Debtor projects that it will need to use more than $1,077,157 in cash during the first five (5) weeks after the Petition Date in order to fund its ongoing operational expenses[6].  Accordingly, timely approval of the proposed use of cash collateral is critical to preserving the going concern value of Debtor's estate from the outset of the Chapter 11 Case.

In addition, Debtor is requesting that the Court set a final hearing on the proposed use of cash collateral.  Debtor requests that the Court set the final hearing within thirty (30) days of the Petition

---

[6] During this period, Debtor projects collections of $1,216,245 leaving a net positive cash balance at the end of such period of $139,088.

13

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

1  Date, subject to availability on the Court's calendar.  Obtaining certainty regarding Debtor' ability to

2  use cash collateral is a key step for Debtor to stabilize operations as chapter 11 Debtor in possession,

3  which will then enable Debtor and its  professionals to focus complete attention on the implementation

4  of Debtor' plan of reorganization.

5  **IV.**

6  **LEGAL ARGUMENT**

7  **A.    Debtor's Use of Cash Collateral and Proposed Adequate Protection of the Pre-Petition

8  Lender's Interest Pursuant to the Interim Order Complies With Bankruptcy Code
   Sections 361, 362 and 363.**

9  As Debtor in possession, Debtor is authorized to operate its business under the Bankruptcy

10  Code. See 11 U.S.C. § 1108.  The Bankruptcy Code provides that a debtor in possession may use cash

11  collateral only with a secured creditor's consent or if the Court, after notice and a hearing, authorizes

12  such use.  See 11 U.S.C. § 363(c)(2).  Absent consent, courts look to whether a secured creditor has

13  "adequate protection" of its interest in cash collateral as a condition to authorizing its use.  See, e.g., 11

14  U.S.C. § 363(e); see also United Savings Ass'n v. Timbers of Inwood Forest Ass'n, 484 U.S. 365, 369-

15  73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" that secures

16  the claim).  In addition, section 362(d)(1) enables a party with an interest in property of the estate (such

17  as cash collateral) to obtain relief from the automatic stay if there is a lack of adequate protection.  11

18  U.S.C. § 362(d)(1).

19  Bankruptcy Code section 361 provides some examples of adequate protection, including

20  payment of cash or periodic cash payments and the grant of additional or replacement liens.

21  See 11 U.S.C. § 361.  However, the concept of adequate protection is not limited to these specific

22  examples—Bankruptcy Code section 361(3) makes it clear that adequate protection can take any form

23  so long as it will result in the realization of "the indubitable equivalent of [the secured creditor's]

24  interest in such property."  11 U.S.C. § 361(3).

25  The legislative history of section 361 provides further reinforcement for the broad flexibility

26  that bankruptcy courts have in deciding what constitutes adequate protection on a case-by-case basis:

27  This section specifies the means by which adequate protection may be provided.
   It does not require the court to provide it. To do so would place the court in an

28

14

ACTIVE 42714763v2 10/12/2016

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

administrative role. Instead, the trustee or debtor-in-possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97 (10th Cir. 1987) (same).

Pursuant to Bankruptcy Code section 507(b), if a party is provided with adequate protection and, notwithstanding such protection, the party has a claim allowable under section 507(a)(2), then such claim shall have priority over every other claim allowable under section 507(a)(2).

Here, the proposed Interim Order provides for the Pre-Petition Lender to be protected by several forms of adequate protection, including Adequate Protection Payments, Replacement Liens, and the Pre-Petition Lender's Superpriority Claim. Moreover, the Pre-Petition Lender's Two Secured Loans are further protected by in Debtor's property. And, the March 21, 2013 Loan is also secured by very substantial equity in the Stephanie Property upon which Pre-Petition Lender holds Deed of Trust securing such loan. See Familian Declaration. And, should it become relevant if it is later determined that the June 14, 2016 Loan is secured by any of the Debtor's property, that loan is also secured by the Klondike Property which Debtor asserts has a value of $5,000,000 (subject to a prior lien held by Pre-Petition Lender of $1,435,000 leaving equity to secure such loan of $3,565,000). Due to the nature of Debtor's business, the primary source of value is the collection of gaming revenues, restaurant revenues, operating its casino, refurbishing business and Slot Routes which in turn depend on paying its leases and participation agreements for Slot Routes, other ongoing working capital needs and expenses of operation, including, without limitation, employee payroll expenses, vendors and fund the costs of administering Debtor's estate, including without limitation, fees assessed by the Office of the United States Trustee and the Clerk of Court and fees and expenses of estate professionals to the extent not covered by anticipated DIP Financing. Therefore, the best way to preserve value for the benefit of the Pre-Petition Lender (and all other creditors and parties-in-interest of the Debtor's estate) is for Debtor to continue to operate, which it cannot do without the use of cash collateral. See Omnibus Declaration.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

15

ACTIVE 42714763v2 10/12/2016

1  Indeed, as noted above, if Debtor is unable to fund payments to employees, vendors and Slot Route

2  leaseholders, its ability to collect revenues will be severely and adversely affected. See id. Finally, the

3  anticipated DIP Financing will further protect the interests of the Pre-Petition Lender because it will

4  provide new money to fund administrative expenses of the Chapter 11 Case yet remain junior to the

5  interests of the Pre-Petition Lender.

6  Therefore, because the proposed Interim Order complies with the requirements of the

7  Bankruptcy Code, the Court should authorize Debtor to use cash collateral and provide adequate

8  protection to the Pre-Petition Lender in accordance therewith.

9  **B.    Debtor's Decision to Enter into a Cash Collateral Agreement Is Supported by Sound Business Judgment.**

10

11  Courts generally give broad deference to the business decisions of a debtor. See, e.g., Stephens

12  Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines, Inc., 780 F.2d

13  1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Walter v. Sunwest

14  Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987).

15  Here, Debtor's request to use cash collateral pursuant to the proposed Interim Order represents a

16  reasonable exercise of business judgment. As demonstrated by the Initial Cash Budget, Debtor has an

17  immediate need for the use of cash collateral in order to fund its operations and the expenses of the

18  Chapter 11 Case. Without the use of cash collateral, Debtor would not be able to fund operations and

19  proceed with a reorganization. Instead, Debtor would be faced with the potential for administrative

20  insolvency followed by a liquidation. Given the choice between these two alternatives, Debtor is

21  prudently attempting to negotiate a Cash Collateral Agreement with the Pre-Petition Lender, and has

22  proposed the terms set forth in the Interim Order to ensure that Debtor would have the necessary

23  funding for the Chapter 11 Case. Therefore, the Court should approve Debtor' decision to use cash

24  collateral pursuant to the proposed Interim Order as an exercise of sound business judgment.

25  **C.    The Court Should Schedule Interim and Final Hearings On This Motion Pursuant To Bankruptcy Rule 4001(b)(2).**

26

27  Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion for authorization to use

28  cash collateral may be commenced not earlier than fourteen (14) days after service of the motion. Upon

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

16

ACTIVE 42714763v2 10/12/2016

1  request, however, the Bankruptcy Court is empowered to conduct an expedited hearing on the motion

2  and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm

3  to a debtor's estate.

4        Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 9006, Debtor requests that the Court

5  conduct an expedited interim hearing on the Motion (the "Interim Hearing") and, after the entry of the

6  Interim Order, allow Debtor to use cash collateral in accordance therewith.  Debtor has an urgent and

7  immediate need for cash to fund chapter 11 administration expenses and operations, as set forth in the

8  Initial Cash Budget.  In particular, Debtor must be able to continue to make payments to its employees,

9  vendors, Slot Route leaseholders, or otherwise risk a severe and adverse impact on project revenue

10 collections.  The Pre-Petition Lender asserts an interest in all of Debtor's cash, and Debtor does not

11 have any source of cash funding (other than DIP Financing under negotiation, which is to be used to

12 pay US Trustee fees, court fees and professional fees and therefore cannot satisfy Debtor's post-petition

13 operating and other administrative expenses).  Debtor submits that the terms of the proposed Interim

14 Order are fair, reasonable and in the best interests of Debtor's estate.  Therefore, entry of the Interim

15 Order is proper under Bankruptcy Rule 4001(b)(2).

16       Also pursuant to Bankruptcy Rule 4001(b)(2), Debtor requests that the Court schedule the final

17 hearing on the Motion within thirty (30) days of the Petition Date, subject to availability on the Court's

18 calendar.  Obtaining certainty regarding Debtor' ability to use cash collateral is a key step for Debtor to

19 stabilize operations as chapter 11 debtor in possession, which will then enable Debtor and its

20 professionals to focus complete attention on the implementation of Debtor' plan of reorganization.

21                                          **V.**

22                                        **NOTICE**

23       Notice of this Motion is being given by electronic mail, facsimile or overnight delivery to the

24 following parties or their counsel:  (a) the Office of the United States Trustee for the District of

25 Nevada; (b) counsel to Pre-Petition Lender; (c) all parties listed on the List of Creditors Holding the 20

26 Largest Unsecured Claims; and (d) all other parties requesting notice pursuant to Bankruptcy Rule

27 2002.  In light of the nature of the relief requested, Debtor respectfully submits that no further notice is

28 necessary.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

17

ACTIVE 42714763v2 10/12/2016

**VI.**

**CONCLUSION**

WHEREFORE, based upon all the foregoing, as set forth in this Memorandum, the Motion, the Omnibus Declaration, the Familian Declaration and all other papers, documents, and other evidence submitted in support of the Motion, Debtor respectfully request that the Court grant the Motion in its entirety and: (1) approve Debtor' use of cash collateral on an interim basis pending a final hearing on the Motion; (2) enter the Interim Order, in substantially the form attached hereto as **Exhibit "1;"** (3) authorize the Adequate Protection Payments, grant the Pre-Petition Lender the Replacement Liens, Pre-Petition Lender's Superpriority Claim and other forms of adequate protection as provided in the Interim Order; (4) schedule a final hearing on this Motion; (5) in conjunction with the final hearing, enter the Final Order approving Debtor' use of cash collateral on a final basis; and (6) grant to Debtor such other relief as the Court deems necessary and appropriate.

DATED this 12th day of October, 2016.

**FOX ROTHSCHILD LLP**

By     */s/Brett Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *[Proposed] Counsel for Nevada Gaming Partners, LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

ACTIVE 42714763v2 10/12/2016

EXHIBIT "1"

**PROPOSED INTERIM ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA MOORE, ESQ.
Nevada Bar No. 9676
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        mmoore@foxrothschild.com
*[Proposed] Counsel for Nevada Gaming Partners, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. BK-S-16-15521-led |
| NEVADA GAMING PARTNERS, LLC, a Nevada limited liability company, | Chapter 11 |
| | **INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 AND FED. R. BANKR. P. 4001(b) AND 4001(d): (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION; (II) GRANTING RELATED RELIEF; AND (III) SCHEDULING FINAL HEARING** |
| Debtor. | |
| | Hearing Date:     OST PENDING |
| | Hearing Time:     OST PENDING |

The Court, having reviewed and considered the Motion (the "Motion") filed by Nevada Gaming

Partners, LLC ("Debtor"), for entry of an interim order (the "Interim Order") and final order (the "Final

Order") pursuant to sections 361, 362 and 363 of title 11 of the United States Code, §§ 101 *et. seq.* (the

ACTIVE 42714763v2 10/12/2016

1

*(left margin, vertical)* FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

"Bankruptcy Code"), Rules 4001(b) and 4001(d) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 4001(b) and 4001(c) of the Local Rules for the U.S. Bankruptcy Court,

District of Nevada ("Local Rules"): (i) authorizing and approving, among other things, (a) Debtor to use

the cash collateral of Western Alliance Bank and Bank of Nevada (the "Pre-Petition Lender"),

(b) Debtor to provide adequate protection to the Pre-Petition Lender, (c) the form and manner of service

of the Motion; and (ii) scheduling interim and final hearings with respect to the relief requested therein;

and it appearing that the relief requested is in the best interests of Debtor's estate, its creditors and all

other parties in interest; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all

other pleadings and evidence submitted by the parties in connection with the Motion; and due and

proper notice of the Motion having been provided; and it appearing that no other or further notice need

be provided; and the Court having determined that the legal and factual grounds set forth in the Motion

establish just cause for the relief granted herein; and the Court having considered the oral arguments of

counsel at the hearings held on October ____, 2016; and the Court having made findings of fact and

conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated

herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these

proceedings by Bankruptcy Rule 7052; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

**I.        Background, Jurisdiction and Notice.**

A.        On October 12, 2016 (the "Petition Date"), Debtor commenced its bankruptcy case

by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is

continuing to operate its business as a debtor-in-possession pursuant to Bankruptcy Code sections

1107(a) and 1108. No statutory committee ("Committee"), examiner, or trustee  has been appointed in

this case.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Debtor has complied with the requirements of Bankruptcy Rules 4001(b) and 4011(d), and Local Rules 4001(b), 4001(c) and 9006, requiring, among other things, that the Interim Hearing be held on less than twenty-one (21) days notice by serving the Motion and providing notice of the Interim Hearing by facsimile or overnight mail to: (i) the U.S. Trustee; (ii) all parties listed on the List of Creditors Holding the 20 Largest Unsecured Claims; (iii) counsel for the Pre-Petition Lender; and (iv) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

## II.      Findings Regarding the Use of Cash Collateral Based on the Record at the Interim Hearing.

D.      The Pre-Petition Lender made the following loans (collectively, the "Loans") to the Debtor and asserts that such Loans are valid and secured as follows:

1.      Loan made on March 21, 2013 in the principal amount of $300,000 which by amendment on April 1, 2014 was increased to $500,000 (the "March 21, 2013 Loan").  The various loan documents and amendments thereto include the following:

a)      Revolving Loan Agreement dated March 21, 2013, as amended between Debtor and Pre-Petition Lender,

b)      Revolving Promissory Note dated March 21, 2013 executed and issued by Debtor to Pre-Petition Lender.

c)      Security Agreement dated March 21, 2013 entered between Debtor and Pre-Petition Lender which states that Loan is generally secured by Accounts, Equipment General Intangibles, and other property, all as more particularly set forth and described therein.

d)      Deed of Trust And Security Agreement With Assignment of Rents and Fixture Filing executed by NGP Stephanie Property, LLC ("NGP Stephanie") which states that the March 21, 2013 Loan is secured by real property known as 5520 Stephanie Street, Las Vegas, Nevada

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

("Stephanie Property") together with NGP Stephanie's rights and interests in various personal property as set forth therein.  Said Deed of Trust was recorded with the Clark County Recorder's office on March 25, 2013, No. 201303250002373.

e)        Modification to Deed of Trust And Security Agreement With Assignment of Rents and Fixture Filing dated April 1, 2014 and recorded with the Clark County Recorder's office on April 4, 2014, No. 20140404-0001091 which modified the aforesaid Deed of Trust to increase the loan amount to $500,000.

2.        Pre-Petition Lender asserts that the present balance of the March 21, 2013 Loan is approximately $495,829 plus any unpaid interest.

3.        Loan made on December 7, 2015 in the principal amount of $500,000 (the "December 7, 2015 Loan").  The various loan documents and amendments thereto include the following:

a)        Business Loan Agreement dated December 7, 2015, between Debtor and Pre-Petition Lender,

b)        Promissory Note dated December 7, 2015, executed and issued by Debtor to Pre-Petition Lender.

c)        Commercial Security Agreement  dated December 7, 2015 entered between Debtor and Pre-Petition Lender which states that Loan is generally secured by accounts, general intangibles, instruments, rents, monies, and all equipment on schedule A attached thereto, as well as other property, all as more particularly set forth therein.

4.        Pre-Petition Lender asserts that the present balance of the December 7, 2015 Loan is approximately $425,000 plus any accrued but unpaid interest.

5.        Loan made on June 14, 2016 in the principal amount of $500,000 (the "June 14, 2016 Loan").  The various loan documents and amendments thereto include the following:

a)        Promissory Note dated June 14, 2016  executed and issued by Debtor to Pre-Petition Lender.

b)        Commercial Guaranty executed by Klondike Partners, LLC ("Klondike") dated June 14, 2016.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada  89135
(702) 262-6899

c)      Commercial Security Agreement  dated June 14, 2016 entered between Klondike and Pre-Petition Lender which states that Loan is generally secured by accounts, general intangibles, instruments, rents, monies, and all equipment as described on exhibit B attached thereto, as well as other property, all as more particularly set forth therein.

d)      Deed of Trust executed by Klondike which states that the June 14, 2016 Loan is secured by real property known as 444 West Sunset Road, Henderson, Nevada ("Klondike Property") together  with Klondike's rights and interests in various personal property as set forth therein.  Said Deed of Trust was recorded with the Clark County Recorder's office on June 17, 2016, No. 20160617-0001050.

6.      Pursuant to statements issued by Pre-Petition Lender, the current interest rates on the loans are as follows:  (i) 5.25% on March 21, 2013 Loan, (ii) 4.95% on December 7, 2015 Loan, and (iii) 4.75% on June 14, 2016 Loan.

E.      UCC-1 financing statements naming the Pre-Petition Lender as secured party and Debtor as the debtor therein have been filed with the Nevada Secretary of State as follows:

1.      On December 15, 2015, No. 2015034496, which generally states the  collateral covered by said financing statement as being, among other things, All Inventory, Accounts, Equipment and General Intangibles and certain other property listed on Exhibit A thereto;

2.      On April 1, 2013, No. 2013008052 which generally indicates that the collateral covered by said financing statement as being the property described on Exhibit A annexed thereto (consisting, generally, of property which would fall into categories of equipment, general intangibles, intellectual property, contract rights, insurance/condemnation proceeds, accounts, rights of action, deposit accounts, etc. (as more fully and specifically set forth on Exhibit A).

F.      With respect to each of the Loans, the Debtor asserts as follows:

1.      March 21, 2013 Loan.

1)      The current interest rate is 5.25%.

2)      The approximate value of Debtor's assets securing that loan is approximately $3,042,367.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

3)    The Stephanie Property which also secures said loan has a value of $4,125,000, the prior lien thereon (also held by Pre-Petition Lender) has a balance of approximately $1,210,000, leaving equity in the amount of $2,915,000 securing the loan.

2.    December 7, 2015 Loan

1)    The current interest rate is 4.95% (variable, subject to change).

2)    The approximate value of Debtor's assets securing that loan is $3,042,367

3.    June 14, 2016 Loan

1)    The current rate is 4.75% (variable, subject to change).

2)    The Klondike Property which secures said loan has a value of $5,000,000, the prior lien thereon (also held by Pre-Petition Lender) has a balance of approximately $1,435,000, leaving equity in the amount of $3,565,000 securing  the loan.

3)    It does not appear that the June 14, 2016 loan is secured by any of the Debtor's property.

4.    Based on statements Debtor received, Pre-Petition Lender asserts that the present principal balance of the Loans is approximately as follows: (i) the Two Secured Loans total approximately $921,000 (March 21, 2013 Loan's principal balance is $495,829 and December 7, 2015 Loan's principal balance is $425,000); and (ii)  the June 14, 2016 Loan's principal balance is $500,000. Debtor believes that accrued and unpaid interest on the Two Secured Loans should  not be significant since the payments on each of the Loans were current until a month or two prior to the Petition Date

G.    During the Chapter 11 Case, Debtor needs to use cash collateral (as defined in Bankruptcy Code section 363) in which the Pre-Petition Lender asserts an interest (the "Pre-Petition Lender's Cash Collateral").

H.    Debtor has an immediate and critical need to use the Pre-Petition Lender's Cash Collateral.  Debtor' ability to use the Pre-Petition Lender's Cash Collateral is critical to its ability to continue as a going concern during the course of the Chapter 11 Case.

I.    An initial 13-week Cash Budget through the week ended January 4, 2017 (the "Initial Cash Budget") is attached to the Motion as **Exhibit "2."**  Debtor's ability to use cash collateral under the terms of this Interim Order in accordance with the Initial Cash Budget is vital to the preservation

ACTIVE 42714763v2 10/12/2016                    6

and maintenance of the going concern value of Debtor's estate and to Debtor's successful reorganization. Consequently, without the ability to use cash collateral to the extent authorized pursuant to this Interim Order, Debtor and its estate would suffer immediate and irreparable harm.

J.    The terms of this Interim Order are fair and reasonable under the circumstances. The Debtor' proposed use of cash collateral pursuant to the terms of this Interim Order reflects Debtor's sound exercise of prudent business judgment consistent with its fiduciary duties.

K.    The adequate protection to be provided pursuant to this Interim Order with respect to the Two Secured Loans, including, without limitation, the Adequate Protection Payments, the Replacement Liens and the Pre-Petition Lender's Superpriority Claim, (in addition to the fact that the March 21, 2013 Loan is fully and substantially over-secured by the value of the Stephanie Property) is consistent and in compliance with the Bankruptcy Code, including sections 361, 362 and 363 thereof. The June 14, 2016 Loan appears, at this time, not to be secured by any of the Debtor's property, and being an unsecured obligation as to the Debtor is not entitled to any adequate protection or other compliance with the Bankruptcy Code, including sections 361, 362 and 363.

L.    Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d), and, to the extent it applies, Bankruptcy Rule 6003, as the Court finds that entry of this Interim Order is necessary to avoid immediate and irreparable harm to Debtor and its estate. Entry of this Interim Order is in the best interest of Debtor, its estate and creditors.

M.    Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**III.    Disposition.**

1.    The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry.

2.    From the Petition Date through the Termination Date (as hereinafter defined), Debtor shall be permitted to use the Pre-Petition Lender's Cash Collateral according to the terms of this Interim Order. Debtor shall have no right to use the Pre-Petition Lender's Cash Collateral after the occurrence

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

and during the continuance of any Event of Default (as hereinafter defined), except as provided herein with respect to the Carve-Out (as hereinafter defined).

3.     Under no circumstances shall any of the Pre-Petition Lender's Cash Collateral be used to pursue any action or joinder in any action, counter-claim, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, determination or similar relief (including conducting formal or informal discovery in connection therewith) (a) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any claim of the Pre-Petition Lender against Debtors or any lien of the Pre-Petition Lender against Debtors' property (collectively, the "Pre-Petition Lender's Liens/Claims"); (b) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the Pre-Petition Lender's Liens/Claims; (c) seeking authority to use any of the Pre-Petition Lender's Cash Collateral without the Pre-Petition Lender's consent, other than as provided herein; or (d) challenging the legality, validity, amount, priority, perfection or enforceability (as the case may be) of any of Pre-Petition Lender's Liens/Claims against Debtor; provided, however, that should a Committee be appointed under Bankruptcy Code section 1102, such committee may use, subject to the Cash Budget, up to $25,000 of Pre-Petition Lender's Cash Collateral, solely to investigate the Pre-Petition Lender's Liens/Claims; and provided further, however, that any challenge regarding the Pre-Petition Lender's Liens/Claims asserted by such Committee(s) must be commenced on or before the earlier to occur of (x) twenty (20) days after the appointment of such Committee; or (y) sixty (60) days after the Petition Date.

4.     All use of the Pre-Petition Lender's Cash Collateral shall be subject to compliance with this Interim Order and the Initial Cash Budget; provided, however, that compliance with the Initial Cash Budget shall be deemed satisfied if the actual aggregate expenditures for every four-week period (i.e. post-petition weeks one through four, weeks five through eight, etc.) do not exceed by more than twenty percent (20%) the aggregate budgeted amount for such four-week period as set forth in the Initial Cash Budget.  The Initial Cash Budget may be modified or replaced with the written consent of both Debtor and the Pre-Petition Lender without the need for Court approval, or, if the Pre-Petition Lender does not provide written consent thereto, then upon Bankruptcy Court approval.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

5.      To the extent that the full amount of any of the expenses budgeted for a particular four-week period under the Initial Cash Budget is not disbursed during such four-week period, the unused balance shall be added to the amount of budgeted expenses for ensuing four-week periods and the Initial Cash Budget shall be deemed to be amended (and approved) to reflect the same, such that Debtor may use such unused budgeted amounts in subsequent four-week periods in addition to originally-budgeted amounts for such four-week periods.

6.      As adequate protection under Bankruptcy Code sections 361, 362, 363 and 552 for any diminution in the value (as it existed on the Petition Date) of Pre-Petition Lender's interest in its collateral (the "Pre-Petition Collateral") (any such diminution to be determined by agreement or order of the Bankruptcy Court after notice and a hearing) caused by the imposition of the automatic stay and/or Debtor' use of the Pre-Petition Lender's Cash Collateral and other Pre-Petition Collateral (a "Value Diminution"), the Pre-Petition Lender shall receive:

(a)      monthly adequate protection payments made by Debtor to the Pre-Petition Lender in an amount equal to the non-default contractual rate of interest applicable from time to time to amounts outstanding under the Two Secured Loans and on the June 14, 2016 Loan in the event that it is hereafter determined that the Pre-Petition Lender has liens on Debtor's property securing that loan[1] (the "Adequate Protection Payments"), which Adequate Protection Payments shall commence on the first day of the first month which is at least thirty (30) days after the Petition Date and continuing on the first day of each month thereafter during the pendency of the Chapter 11 Case (which, based on the Petition Date, is December 1, 2016), and the automatic stay hereby is vacated and modified to the extent necessary to permit Debtor to make such Adequate Protection Payments and the Pre-Petition Lender to apply them against the Pre-Petition Lender's Liens/Claims;

(b)      replacement liens to secure the amount of any Value Diminution (the "Replacement Liens"), which Replacement Liens shall: (i) have the same legality, validity, perfection, priority, enforceability, effectiveness that the Pre-Petition Lender's liens and claims had as of and prior

---

[1] The Cash Budget includes a line item for Adequate Protection Payments of this loan in the event it is determined that it is secured by Debtor's property, but no such payment shall be made to Pre-Petition Lender unless and until there is a determination that this loan is secured by a lien on Debtor's property.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

to the Petition Date, (ii) be subject to dispute and/or challenge on any basis, including, without limitation, the legality, validity, priority, perfection, and/or amount thereof that Pre-Petition Lender's liens and claims had or were subject to as of and/or prior to the Petition Date, (iii) be subject to being invalidated, set aside, avoided or subordinated, in whole or in part that the Pre-Petition Lender's liens and claims were subject to as of and prior to the Petition Date (hereinafter, any dispute, objection to or challenge of the Replacement Liens and Pre-Petition Lender's liens and claims as of and prior to the Petition Date as set forth in sections 6(b) (i), (ii) and (iii) hereinabove shall be collectively referred to as "Challenges" and individually as a "Challenge"), (iv) be subject and junior to the Carve-Out (defined below), and any Prior Liens,[6] (v) attach to the Collateral as of the Petition Date and any other assets of Debtor that are subject to a valid and perfected lien as of the Petition Date,  and  any other previously unencumbered assets of Debtor, and any proceeds of the foregoing other than causes of action and rights of Debtor and its estate under chap§§542-553 of the Bankruptcy Code and the proceeds thereof ("Avoidance Actions"), and (v) be in addition to the Pre-Petition Lender's Liens/Claims and liens; and

(c)    to the extent permitted by Bankruptcy Code section 507(b), a superpriority claim (the "Pre-Petition Lender's Superpriority Claim") against Debtor's estate, subject and junior only to the Carve-Out and Challenge and shall not be applicable to, or effective against Avoidance Actions.

7.    All claims and liens of the Pre-Petition Lender, including, without limitation, its Pre-Petition Lender's Liens/Claims, the Replacement Liens and the Pre-Petition Lender's Superpriority Claims, shall be subject to a carve-out (the "Carve-Out") from its liens and claims, including, without limitation, Petition Lender's Liens/Claims, the Replacement Liens, and the Pre-Petition Lender's Superpriority Claim, for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930, and (ii) only to the extent the amounts are not available under the Cash Budget, an amount not exceeding three hundred thousand dollars ($300,000) in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default (defined below), to pay the fees and expenses of professionals

---

[6] "Prior Liens" shall consist of any and all valid and duly perfected liens, mortgages or other security interests in the Pre-Petition Collateral in existence and senior to the interests of Pre-Petition Lender as of the Petition Date.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

retained by Debtor and any Committee and allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses the Pre-Petition Lender shall not have any right to seek disgorgement);  provided, however, that (x) Debtor shall be permitted to pay compensation and reimbursement of expenses allowed, allowable or otherwise authorized by the Bankruptcy Court and payable under Bankruptcy Code sections 330 and 331 in accordance with the Cash Budget; (y) the Carve-Out shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed or allowable by the Bankruptcy Court) prior to the occurrence of an Event of Default in respect of which the Carve-Out is invoked; and (z) the  Pre-Petition Lender shall not have any right to seek disgorgement of the Carve-Out; and provided, further, that nothing herein shall be construed to impair the ability of the Pre-Petition Lender to object to the reasonableness of any of the fees, expenses, reimbursement or compensation sought by the professionals retained by Debtor or any Committee.

8.      The Debtor shall be authorized to use the Pre-Petition Lender's Cash Collateral through the earliest of (a) fifteen (15) months from the Petition Date, unless (x) the confirmation hearing for Debtor' chapter 11 plan has commenced on or before such date, in which case the foregoing fifteen (15) month period shall be extended automatically to eighteen (18) months from the Petition Date without action or approval by Debtor, the Pre-Petition Lender or the Bankruptcy Court, or (y) a date as otherwise agreed to in writing by Debtor and the Pre-Petition Lender (for which no Bankruptcy Court approval will be required), (b) the date any chapter 11 plan confirmed in the Chapter 11 Case becomes effective, or (c) the occurrence of an Event of Default (as hereinafter defined) that is no longer subject to cure (each, a "Termination Date").  Notwithstanding the occurrence of a Termination Date, upon Debtor's receipt of sufficient funds, Debtor shall be entitled to continue to use the Pre-Petition Lender's Cash Collateral to pay (i) amounts that fall within the scope of the Carve-Out, and (ii) all expenses set forth in and in accordance with the Cash Budget for the period through the Termination Date.

9.      Upon written notice from the Pre-Petition Lender, any of the following shall be an event of default (each an "Event of Default") (for purpose of items (i) through (ix) by way of a final order, the effectiveness of which has not been stayed): (i) appointment of a chapter 11 trustee with respect to the Chapter 11 Case; (ii) appointment of an examiner with expanded powers with respect to the Chapter 11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

Case; (iii) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (iv) dismissal of the Chapter 11 Case; (v) the Bankruptcy Court terminating the Debtor's authority to operate its business; (vi) reversal, vacatur or stay of the effectiveness of this Interim Order; (vii) this Interim Order being amended, supplemented or otherwise modified without the prior written consent of the Pre-Petition Lender; (viii) any use of Cash Collateral to make a payment that is not in compliance with the Initial Cash Budget; (ix) breach by Debtor of any other provision of this Interim Order, and such breach remains uncured for a period of ten (10) days after written notice of such breach is actually received by Debtor.

10.    The Pre-Petition Lender shall not be required to file or serve financing statements, notices of lien or similar instruments that otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect the Replacement Liens; and the failure by Debtor to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

11.    Notwithstanding an Event of Default, any amounts that have been disbursed in accordance with the Initial Cash Budget and/or the Carve-Out shall not be subject to disgorgement in favor of the Pre-Petition Lender.

12.    The Debtor, any Committee, any trustee hereinafter appointed in the Chapter 11 case or in a case under Chapter 7  reserve their respective rights with regard to any Challenge, and without limiting the generality of the foregoing, the characterization of the Pre-Petition Lender's Liens/Claims as to the Debtor's property as "oversecured" or "undersecured" pursuant to Bankruptcy Code § 506, as well as the characterization and/or application of the Adequate Protection  Payments, and the Bankruptcy Court makes no determination with regard to those matters at this time.

13.    Except to the extent expressly provided in this Interim Order nothing contained herein shall prejudice Debtor or Pre-Petition Lender with respect to any matter.  Without limiting the generality of the foregoing or any other provisions of this Interim Order, the Debtor and Pre-Petition Lender each reserves all of its respective rights, remedies, claims, defenses and positions regarding any issues or matters not expressly provided for in this Interim Order, including, without limitation, such rights, remedies, claims,  defenses, positions regarding (i) Debtor's application for further use of cash

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

1  collateral notwithstanding the termination of such use under this or any further interim or final orders

2  authorizing use of cash collateral; or (ii) voting, seeking confirmation of, opposing, or supporting any

3  plan of reorganization.

4        14.    The Pre-Petition Lender shall not object to or oppose any application by the Debtor for

5  Bankruptcy Court approval of Debtor in Possession post-petition financing under Bankruptcy Code

6  §364 and any other applicable Bankruptcy Code provisions, as long as any liens and superpriority

7  claims provided to the post-petition lender thereunder are subject to the Pre-Petition Claims and liens,

8  the Replacement Liens and Superpriority Claims provided to Pre- Petition Lender under this Interim

9  Order.

10        15.    To the extent applicable, this Interim Order is not subject to the 14-day stay provision of

11  Bankruptcy Rules 4001(a)(3) or 6003.

12        16.    Debtor shall cause a copy of this Interim Order to be served within three (3) business

13  days of its entry, by electronic mail, U.S. Mail or the Court's ECF noticing of the Interim Hearing to:

14  (a) Bob L. Olson of the law firm of Snell & Wilmer, counsel for the Pre-Petition Lender, (b) the Office

15  of the United States Trustee for the District of Nevada, Attn: Athanasios Agelakopoulos; (c) counsel for

16  any Committee, and if no such committee was appointed, then to the parties listed on the List of

17  Creditors Holding the 20 Largest Unsecured Claims; and (d) all other secured creditors, and all other

18  parties requesting notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

19        18.    Final Hearing. A hearing to consider entry of an order granting the relief set forth in this

20  Interim Order on a final basis (the "Final Order") shall be held on _____, at ____ _.m. (the

21  "Final Hearing") in _____; with any objections (the "Objections") to entry of a Final Order

22  due to be timely filed electronically with the Court and served on the Notice Parties and Debtor's

23  counsel: Fox Rothschild, LLP, 1980 Festival Plaza Drive, Suite 700, Las Vegas, Nevada 89135, Attn:

24  Brett A. Axelrod, Esq. (collectively, the "Objection Notice Parties") (with a courtesy copy delivered

25  directly to the Chambers of the Honorable _____) no later than 4:00 pm Pacific time

26  on_____, 2016. Replies to timely-filed Objections, if any, shall be filed with the Bankruptcy

27  Court electronically and served no later than 4:00 pm Pacific time on _____, 2016

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

1  (with a courtesy copy delivered directly to the Chambers of the Honorable _____ ) by the

2  Objection Notice Parties and the objecting party.

3

4  Prepared and respectfully submitted by:

5  **FOX ROTHSCHILD LLP**

6  By____/s/_____

7      BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859

8      MICAELA RUSTIA MOORE, ESQ.
    Nevada Bar No. 9676

9      1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135

10    *[Proposed] Counsel for Nevada Gaming Partners, LLC*

11

12

13 APPROVED/DISAPPROVED:

   **OFFICE OF THE UNITED STATES TRUSTEE**

14

15 BY: _____

16     Athanasios Agelakopoulos
    Trial Attorney for Tracy Hope Davis,
    United States Trustee

17     Foley Federal Building

18     300 Las Vegas Boulevard South, Suite 4300
    Las Vegas, Nevada 89101

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that:

☐    The Court has waived the requirement set forth in LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

        Athanasios Agelakopoulos,
        TRIAL ATTORNEY
        OFFICE OF THE UNITED STATES
        TRUSTEE

        Approved / Disapproved

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion, pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

                         # # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899

ACTIVE 42714763v2 10/12/2016

15

# EXHIBIT 2

## INITIAL CASH BUDGET

**Nevada Gaming Group - 13 Week Cashflow Projections**
**13 Week Cash Flow Statement**
*($ In USD)*

| | | Actual / Projected Week Ending Week | Proj. 12-Oct-16 1 | Proj. 19-Oct-16 2 | Proj. 26-Oct-16 3 | Proj. 2-Nov-16 4 | Proj. 9-Nov-16 5 | Proj. 16-Nov-16 6 | Proj. 23-Nov-16 7 | Proj. 30-Nov-16 8 | Proj. 7-Dec-16 9 | Proj. 14-Dec-16 10 | Proj. 21-Dec-16 11 | Proj. 28-Dec-16 12 | Proj. 4-Jan-17 13 | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Initial cash balance | $ | 945,500 | $ 1,037,755 | $ 1,130,009 | $ 891,024 | $ 987,556 | $ 1,084,588 | $ 1,180,636 | $ 1,277,169 | $ 1,034,223 | $ 1,123,403 | $ 1,211,426 | $ 1,298,707 | $ 977,261 | | |
| Total Sources for Operations | $ | 239,647 | $ 239,647 | $ 241,898 | $ 247,526 | $ 247,526 | $ 247,526 | $ 247,526 | $ 238,536 | $ 238,536 | $ 238,536 | $ 238,536 | $ 238,883 | $ 239,144 | $ | 3,143,469 |
| Cash In | $ | 239,647 | $ 239,647 | $ 241,898 | $ 247,526 | $ 247,526 | $ 247,526 | $ 247,526 | $ 238,536 | $ 238,536 | $ 238,536 | $ 238,536 | $ 238,883 | $ 239,144 | $ | 3,143,469 |
| | | | | | | | | | | | | | | | | |
| **Disbursements for Operations** | | | | | | | | | | | | | | | | |
| Leases | | - | - | (231,950) | - | - | - | - | (231,950) | - | - | - | (231,950) | - | | (695,850) |
| Payroll | | (97,721) | (97,721) | (99,053) | (100,534) | (100,034) | (101,018) | (100,534) | (99,969) | (99,795) | (100,952) | (101,605) | (103,478) | (104,373) | | (1,306,876) |
| Purchases | | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | (23,207) | | (301,697) |
| Utilities | | - | - | (16,449) | - | - | - | - | (17,070) | - | - | - | (17,784) | - | | (51,302) |
| Other S G&A | | (23,965) | (23,965) | (29,190) | (24,753) | (24,753) | (24,753) | (24,753) | (28,854) | (23,854) | (23,854) | (23,854) | (28,888) | (23,914) | | (329,347) |
| **Total Disbursements for Operations** | $ | (144,893) | $ (144,893) | $ (399,849) | $ (148,494) | $ (147,994) | $ (148,978) | $ (148,494) | $ (401,050) | $ (146,856) | $ (148,013) | $ (148,766) | $ (405,308) | $ (151,494) | $ | (2,685,071) |
| | | | | | | | | | | | | | | | | |
| **Disbursements for Non-operations** | | | | | | | | | | | | | | | | |
| Insurance | | - | - | (13,434) | - | - | - | - | (12,757) | - | - | - | (12,581) | - | | (38,772) |
| **Total Disbursements for Non-operations** | $ | - | $ - | $ (13,434) | $ - | $ - | $ - | $ - | $ (12,757) | $ - | $ - | $ - | $ (12,581) | $ - | $ | (38,772) |
| | | | | | | | | | | | | | | | | |
| **Disbursements for Bankruptcy** | | | | | | | | | | | | | | | | |
| Professional Fees | | - | - | (45,000) | - | - | - | - | (45,000) | - | - | - | (45,000) | - | | (135,000) |
| Chapter 11 related expenses | | - | - | (14,000) | - | - | - | - | (14,000) | - | - | - | (14,000) | - | | (42,000) |
| **Total Disbursements for Bankruptcy** | $ | - | $ - | $ (59,000) | $ - | $ - | $ - | $ - | $ (59,000) | $ - | $ - | $ - | $ (59,000) | $ - | $ | (177,000) |
| | | | | | | | | | | | | | | | | |
| **Principal and interest payments** | | | | | | | | | | | | | | | | |
| Western Alliance Bank (#2538171473) | | - | - | (2,033) | - | - | - | - | (2,058) | - | - | - | (2,058) | - | | (6,150) |
| Western Alliance Bank (#2534180129) | | - | - | (2,033) | - | - | - | - | (2,058) | - | - | - | (2,058) | - | | (6,150) |
| Western Alliance Bank (#1103347723) | | - | - | (2,033) | - | - | - | - | (2,058) | - | - | - | (2,058) | - | | (6,150) |
| **Total Principal and interest payments** | $ | - | $ - | $ (6,100) | $ - | $ - | $ - | $ - | $ (6,175) | $ - | $ - | $ - | $ (6,175) | $ - | $ | (18,450) |
| | | | | | | | | | | | | | | | | |
| **Disbursements for CAPEX** | | | | | | | | | | | | | | | | |
| Non-Financed - CAPEX | | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | | (32,500) |
| **Total Disbursements for CAPEX** | $ | (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ (2,500) | $ | (32,500) |
| | | | | | | | | | | | | | | | | |
| **Taxes** | | | | | | | | | | | | | | | | |
| Licensing and other taxes | | - | - | - | - | - | - | - | - | - | - | - | (74,765) | - | | (74,765) |
| **Total Taxes** | $ | - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (74,765) | $ - | $ | (74,765) |
| | | | | | | | | | | | | | | | | |
| Cash Out | $ | (147,393) | $ (147,393) | $ (480,883) | $ (150,994) | $ (150,494) | $ (151,478) | $ (150,994) | $ (481,482) | $ (149,356) | $ (150,513) | $ (151,256) | $ (560,329) | $ (153,994) | $ | (3,026,559) |
| Net Cash In (Out) | $ | 92,255 | $ 92,255 | $ (238,985) | $ 96,532 | $ 97,032 | $ 96,048 | $ 96,532 | $ (242,945) | $ 89,180 | $ 88,023 | $ 87,280 | $ (321,445) | $ 85,149 | $ | 116,911 |
| | | | | | | | | | | | | | | | | |
| Ending cash and cash equiv | $ | 1,037,755 | $ 1,130,009 | $ 891,024 | $ 987,556 | $ 1,084,588 | $ 1,180,636 | $ 1,277,169 | $ 1,034,223 | $ 1,123,403 | $ 1,211,426 | $ 1,298,707 | $ 977,261 | $ 1,062,411 | | |

Notes:
1) Initial cash balance is based on the best estimate of cash in bank and cash on hand balance at 10/12/2016 day end
2) Cashflow includes cash in bank and cash on hand.
3) Cashflow projection is based on historical financials data and management's best estimates